**Darcy FOSTER, et al., Plaintiffs, Appellants,**

v.

**MYDAS ASSOCIATES, INC., etc., et al., Defendants, Appellees.**

No. 91–1165.

United States Court of Appeals, First Circuit.

Heard June 6, 1991.

Decided Sept. 4, 1991.

Joseph L. Kociubes, with whom Molly Cochran, Patricia M. McCarthy, Bingham, Dana & Gould, Ozell Hudson, Jr., Nadine Cohen and Lawyers Committee for Civil Rights Under Law—Boston Bar Ass'n, Boston, Mass., were on brief, for appellants.

Patrice C. Whalen, with whom Geoffrey A. Domenico and Piscitelli, Domenico &

Murphy, Brockton, Mass., were on brief, for appellees.

Cornelius J. Moynihan, Jr., David H. Gibbs, Carla M. Rogers, and Peabody & Brown, Boston, Mass., on brief, for amici curiae Nat. Fair Housing Alliance, NAACP (Boston Branch), Civ. Liberties Union of Mass., Mass. Black Women Attys. Ass'n, and Mass. Bar Ass'n.

Asa D. Sokolow, Lori Barenkopf, Barbara R. Arwine, Thomas J. Henderson, and Rosenman & Colin, New York City, on brief, for amicus curiae Lawyers' Committee for Civil Rights Under Law.

Before SELYA and CYR, Circuit Judges, and STAHL,* District Judge.

SELYA, Circuit Judge.

Darcy and Marjorie Foster, husband and wife, together with their minor child, Terry Foster, were unsuccessful in a race-discrimination suit against four defendants (Robert McKean, Richard Sena, Mydas Associates, Inc., and Jeffrey Chabot). After having prevailed, the defendants sought counsel fees and costs against the plaintiffs and their attorneys. The district court obliged. The Fosters and five of their lawyers (Joseph L. Kociubes, Eve Jacobs–Carnahan, Molly Cochran, Patricia McCarthy, and Nadine Cohen) now appeal. Because we cannot afford meaningful appellate review on the record as it stands, we vacate the award and remand for further proceedings.

## I. TRAVEL OF THE CASE

This civil action was filed in the United States District Court for the District of Massachusetts on April 1, 1988. The plaintiffs alleged that they were the victims of racial discrimination in connection with their unsuccessful efforts to purchase residential property located at 55 Warren Avenue, Brockton, Massachusetts. Their second amended complaint contained six counts. Count 1 alleged that the defendants violated the Fair Housing Act, 42 U.S.C. §§ 3604(a), 3617, in refusing to sell the property to the plaintiffs because of Darcy Foster's race, color, and national origin.[1] Count 2 alleged that the defendants' discriminatory behavior transgressed 42 U.S.C. § 1981. Counts 3 and 4 alleged violations of the state anti-discrimination and civil rights statutes, respectively. Mass.Gen.L. ch. 151B, § 4; Mass. Gen.L. ch. 12, §§ 11H, 11I. Counts 5 and 6 alleged that the defendants' actions constituted unfair business practices in derogation of the state consumer protection laws, specifically, Mass.Gen.L. ch. 93A, §§ 9, 11.[2]

We need neither recount the underlying facts nor dwell on the details of the court proceedings. It suffices to say that, while the plaintiffs won an occasional battle—for example, the defendants' motions for summary judgment were denied—they lost the war. Counts 1, 2, and 3 were tried to, and repudiated by, a jury; count 4 was withdrawn by the plaintiffs prior to trial; and the consumer protection counts, reserved for consideration by the trial judge in accordance with state law, were summarily rejected.

Having prevailed, the defendants sought attorneys' fees and costs. They suggested three main sources of entitlement for such an award: 42 U.S.C. § 1988, Fed.R.Civ.P. 11, and Mass.Gen.L. ch. 231, § 6F.[3] The application asked that the plaintiffs and

---

* Of the District of New Hampshire, sitting by designation.

1. Darcy Foster, a native of Barbados, is black; Marjorie Foster, a native of Canada, is white; both are resident aliens. McKean and Sena were the owners of the property. Mydas was the brokerage house involved in the unconsummated transaction. Chabot was Mydas' employee.

2. For ease in reference, we attach an appendix. Part I contains the gist of the statutes upon which counts 1, 2, 5 and 6 were founded. We omit the state statutes that underbraced counts 3 and 4. The claim premised upon chapter 151B (count 3) added nothing of significance to the appellants' case. The claim premised on chapter 12 (count 4) was discontinued prior to trial.

3. In Part II of the appendix, we set forth the pertinent portions of the statutes and rules relied upon by the defendants in support of their fee application.

their attorneys be made to pay $34,347.48. The district court was quick to respond. On January 16, 1991, some five days after the plaintiffs filed their opposition and requested a hearing (which never materialized), the court entered a footnote order which provided in its entirety: "Application allowed. Court awards $26,000 in fees, costs and expenses." It is this award which has been appealed.

## II. DISCUSSION

This appeal conjures up images of Sir Lancelot, in quest of the Holy Grail, stumbling instead into a storehouse full of paper cups. While appellants and the amici raise a series of important questions regarding the propriety of sanctions in civil rights actions generally, the record before us is hopelessly inadequate to permit enlightened discussion of these questions. Of necessity, our response must be much more narrowly focused.

### A.

■ It is well established that, in shifting fees or imposing sanctions, the district court is expected to explain its actions. *See, e.g., Langton v. Johnston,* 928 F.2d 1206, 1226 (1st Cir.1991); *Morgan v. Massachusetts General Hosp.,* 901 F.2d 186, 195 (1st Cir.1990). We have said countless times before, and today reaffirm, that "[a]ppellate review of fee awards ordinarily requires that concrete findings be made and that the court below supply a clear explanation of the reasons undergirding a particular fee award." *Peckham v. Continental Casualty Ins. Co.,* 895 F.2d 830, 842 (1st Cir.1990). While such findings "need not be infinitely precise," *United*

*States v. Metropolitan Dist. Comm'n,* 847 F.2d 12, 16 n. 4 (1st Cir.1988), they must at least offer a "clear explanation of [the district court's] reasons for the fee award," *Hensley v. Eckerhart,* 461 U.S. 424, 437, 103 S.Ct. 1933, 1941, 76 L.Ed.2d 40 (1983), and the method and manner of the award's calculation, beginning with "the number of [attorney] hours reasonably expended on the litigation times a reasonable hourly rate," *Blum v. Stenson,* 465 U.S. 886, 888, 104 S.Ct. 1541, 1544, 79 L.Ed.2d 891 (1984). When a district court does not make such findings, remand is often required. *See Langton,* 928 F.2d at 1226. And the more tenebrous the record, the more cryptic the lower court's order, the more likely that the court of appeals will find it advisable, if not essential, to remand the matter.[4]

■ Our review function is utterly thwarted here because we know virtually nothing about the district court's award. For one thing, we do not know under what legal authority the court presumed to act. The plaintiffs requested fees under a federal statute, a state statute, and a procedural rule. In addition, there was a fourth possible source of fee-assessing authority as, in a proper case, a district court may award fees in the exercise of its inherent powers. *See Chambers v. NASCO, Inc.,* —— U.S. ——, 111 S.Ct. 2123, 2135–36, 115 L.Ed.2d 27 (1991). These different sources of authority impose varying criteria for judging the appropriateness of fee awards. *Compare, e.g., Lancellotti v. Fay,* 909 F.2d 15, 19 (1st Cir.1990) (setting out standard for awarding fees as a sanction under Fed. R.Civ.P. 11) *with, e.g., Brown v. Borough of Chambersburg,* 903 F.2d 274, 277 (3d Cir.1990) (setting out standard for awarding fees to prevailing defendants under 42

---

4. In rare cases, the reasoning underlying an award may be so apparent that the review function can be performed without the benefit of a meaningful explanation. *See Muthig v. Brant Point Nantucket, Inc.,* 838 F.2d 600, 602–03 (1st Cir.1988) (imposition of Rule 11 sanctions reviewed and upheld despite paucity of explanation by lower court); *cf. Peckham,* 895 F.2d at 842 ("Except where the basis for a fee calculation is apparent on the record's face ... the trier must at least offer ... some indication of his thought processes and how he structured the award."). Or, the record may be so configured

as to permit the court of appeals, in the interest of repose, to make its own modification of an insufficiently explained fee award. *See, e.g., Jacobs v. Mancuso,* 825 F.2d 559, 562 (1st Cir. 1987). But doing so invariably assumes that the record "contains adequate material to permit determination of a fair and reasonable attorney's fee allocation." *Home Placement Service, Inc. v. Providence Journal Co.,* 819 F.2d 1199, 1211 (1st Cir.1987). As the text that follows makes clear, this is a luxury not afforded to us in the case at bar.

U.S.C. § 1988).[5] In order intelligently to review a fee award, the authority upon which the award is based must be known—or, at least, knowable. It follows inexorably that, at a bare minimum, the trial court must indicate, either expressly or by unmistakable implication, which source of authority it is invoking when it makes a fee award. *See Jones v. Pittsburgh National Corp.*, 899 F.2d 1350, 1358 (3d Cir.1990); *Insurance Benefit Administrators, Inc. v. Martin*, 871 F.2d 1354, 1359–60 (7th Cir. 1989); *Ho v. Martin Marietta Corp.*, 845 F.2d 545, 549 (5th Cir.1988); *cf. Langton*, 928 F.2d at 1226 (ordering remand where record was "murky" as to whether judge "actually intended" to shift fees as a reward to prevailing plaintiffs or as a punishment for the defense's foot-dragging). Here, this prudential principle was honored only in the breach: we are left entirely to blind conjecture.

For another thing, we do not know against whom the district court wished the award to run. The possibilities are varied and feature a number of permutations. The court might have intended to make the award effective against some or all of the plaintiffs, some or all of the attorneys, or various combinations drawn from those groups. The order does not say. The problems presented by this uncertainty are compounded by the equally vexing uncertainty about the court's presumed authority for granting the award: whereas Rule 11, for instance, allows for the imposition of sanctions on both a party and on counsel who "sign[ ]" sanctionable pleadings, *see, e.g., Lancellotti*, 909 F.2d at 19, section 1988 does not authorize the award of fees against a plaintiff's attorneys, *see Borough of Chambersburg*, 903 F.2d at 276–77 (compiling cases).

Third, we do not know what specific behavior the court intended to punish. Was the judge concerned with global conduct under section 1988 (that is, whether "the plaintiff's action was frivolous, unreason-

able, or without foundation," *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 421, 98 S.Ct. 694, 700, 54 L.Ed.2d 648 (1978))? Or was the judge concerned with particularized conduct under Fed.R.Civ.P. 11 (that is, the signing of a "pleading, motion, or other paper" that was not "well grounded in fact and … warranted by existing law")? And if the latter, did the judge have in mind subjective bad faith or objective failings? *See, e.g., Lancellotti*, 909 F.2d at 19 (Rule 11 sanctions may be imposed *either* for filings made with an improper purpose *or* for filings made without reasonable inquiry).

We are unwilling to accept the defendants' importuning that statements made by the judge during the course of the trial indicate what conduct the judge intended to sanction. Such off-the-cuff comments are simply not an adequate proxy for specific findings made in the context of the actual imposition of an award. One's perspective often changes as a case evolves. Moreover, judges may be motivated to make remarks during a trial for a googol of reasons. It would be naive for us to assume that comments made by a trial judge during the heat of battle are necessarily consonant with what the judge would find during a detached review of completed proceedings. And, were we tempted to rely upon such badinage as the basis for a monetary award, due process concerns would present a formidable obstacle. *See, e.g., Securities Industry Ass'n v. Clarke*, 898 F.2d 318, 322 (2d Cir.1990); *Donaldson v. Clark*, 819 F.2d 1551, 1559–61 (11th Cir. 1987).

Fourth and finally, the record sheds absolutely no light on how the court arrived at the amount of its award (which was significantly less than the amount requested). In the fee-shifting milieu, we have consistently stressed the need for specific findings of this sort, *see, e.g., Langton*, 928 F.2d at 1226 (in order not to frustrate review, nisi prius court should make "find-

**5.** In the interest of economy, we abjure the temptation to compare all four sources of authority in order to show the very real differences among them. Rather, we use throughout for illustrative purposes the simpler two-way comparison between Fed.R.Civ.P. 11 and 42 U.S.C. § 1988. The actual four-way comparison which the record demands, if fully developed, would serve only to accentuate the need for an order remanding the case.

ings regarding the methods it employed, or the calculations it made, in arriving at the fee it set"); and, even if the judge had Rule 11 in mind, such findings would be relevant to show that the sanction imposed was appropriate in proportion to the particular misconduct. *See Lancellotti*, 909 F.2d at 20; *Unanue–Casal v. Unanue–Casal*, 898 F.2d 839, 842 (1st Cir.1990).

Although this recitation of what the district court's order leaves unresolved is by no means a complete listing, it is more than enough to show why, on this record, informed appellate review is a virtual impossibility. Given these four unknowns, and the multitude of unanswered questions that they generate, we have no principled choice but to remand the case for further consideration and, whichever side prevails below, for findings.

### B.

■ The parties, who agree on little else, all argue that there is no need to remand. Those arguments, though reaching common ground, take very different routes. None of the arguments have much persuasive force.

The appellees say that the award should stand because "a party complaining to an appellate tribunal in respect to trial-level sanctions 'bears a heavy burden of demonstrating that the trial judge was clearly not justified in entering [the] order.'" *Anderson v. Beatrice Foods Co.*, 900 F.2d 388, 393 (1st Cir.) (citation omitted), *cert. denied*, — U.S. —, 111 S.Ct. 233, 112 L.Ed.2d 193 (1990). But this principle is simply an expression of the abuse-of-discretion standard which governs, generally, in fee-assessment and fee-shifting matters, *see, e.g., Maine Audubon Society v. Purslow*, 907 F.2d 265, 267 (1st Cir.1990) (Rule 11); *Wojtkowski v. Cade*, 725 F.2d 127, 130 (1st Cir.1984) (§ 1988). Abuse of discretion occurs, of course,

> when a material factor deserving significant weight is ignored, when an improper factor is relied upon, or when all proper and no improper factors are assessed, but the court makes a serious mistake in weighing them.

*Independent Oil & Chem. Workers of Quincy, Inc. v. Procter & Gamble Mfg. Co.*, 864 F.2d 927, 929 (1st Cir.1988). Appellate judges are not mind readers. Hence, where fee-setting is involved, we ordinarily cannot tell whether the trial court's discretion has been abused until we know what factors it weighed in the balance. Here, the factors are not apparent from the face of the record and the trial court has elected to keep us in the dark as to its thinking. Given the desolate state of the nisi prius roll, the appellees' reliance on the abuse-of-discretion standard puts the cart well before the horse.

We likewise reject any intimation that we, ourselves, should fix a fee amount, presumably by adopting the proffer contained in the defendants' application. We have said that it is "Pollyannaish" to argue that counsel's fee compilation must be accepted at face value. *Weinberger v. Great Northern Nekoosa Corp.*, 925 F.2d 518, 529 (1st Cir.1991); *see also Metropolitan Dist. Comm'n*, 847 F.2d at 17 (a "law firm's bill need not be swallowed whole by the client's litigation adversary just because it *is* the law firm's bill"); *Hart v. Bourque*, 798 F.2d 519, 523 (1st Cir.1986) ("the real test cannot be the number of hours logged, but what was done"). And the problem is compounded exponentially in this case because, absent a satisfactory set of findings, the antecedent question of appellants' *liability* for fees remains open. We, unaided, are far from convinced that this was the egregious case that would warrant either shifting fees in favor of a prevailing civil rights defendant or sanctioning the other side.

The appellants' position is no more solidly grounded. They say that we can forgo a remand and decide this case in their favor, notwithstanding the inadequate record, by resort to a kaleidoscopic array of bright lines. This approach deserves short shrift. We reject out of hand the use of *per se* rules such as have been suggested.

We do not believe it necessary to trace each of the bright lines which the appellants and the amici seek to draw. A representative sampling will suffice. We are

told, for example, that since the Fosters' civil action survived both summary judgment and directed verdict motions, sanctions would be wholly improper. We disagree. Where fees are sought by a prevailing defendant against an unsuccessful plaintiff in a civil rights case, one relevant factor will often be whether the plaintiff succeeded in making out a prima facie case—a circumstance which may well prompt a reviewing tribunal to ask whether the plaintiff's case withstood summary judgment and/or directed verdict motions. But that factor, standing alone, is not entitled to decretory significance. *See Borough of Chambersburg*, 903 F.2d at 279 ("denial of a motion for a directed verdict does not, as a matter of law, foreclose consideration of a defendant's later request for fees based on the frivolousness of the claim"); *Muthig v. Brant Point Nantucket, Inc.*, 838 F.2d 600, 606 (1st Cir.1988) (summary judgment standard and Rule 11 standard are not "necessarily or inevitably congruent"); *see also Blue v. United States Dept. of the Army*, 914 F.2d 525, 536–37 (4th Cir.1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 1580, 113 L.Ed.2d 645 (1991). Sanctions in general, and fee awards in particular, are best considered on a case-by-case basis.[6]

Nor can we avoid the need for remand by honoring the appellants' beseechment that their lawyers, because they accepted the case in a spirit of public service, should be exculpated from all liability. To the extent that counsel is guilty of sanctionable conduct in a civil rights case—and we do not suggest that any such conduct occurred here—sanctions should ensue, whether or not the lawyer has been retained in the ordinary course or is working *pro bono publico*. That is to say, while we admire attorneys who volunteer their services in such cases, they nonetheless remain subject to the same general norms as other lawyers. Courts cannot be expected to base codes of proper conduct on whether, or how much, counsel is paid for his or her work. We think that a system which attempted to encourage lawyers to handle civil rights cases *pro bono* by exempting them from the rules that other attorneys must follow would be not only unwise and unworkable, but perverse.[7]

The appellants also suggest that requiring additional proceedings below, and perhaps another appeal, would have the effect of letting the tail wag the dog, increasing the already significant expenditure of time and money in respect to what should be an issue of far less importance than the main litigation. The appellees make much the same argument, albeit as a prelude to their recommendation that we affirm the award. While we sympathize with the parties' shared sense of frustration, the law does not always lend itself to short cuts. Attempting to go forward on this record would be an acarpous exercise. In the first place, we would be usurping the district court's function, depriving ourselves, and the parties, of the insights of the judicial officer most intimately familiar with the case and its nuances.[8] In the second place,

---

**6.** We note, in passing, that even a *per se* rule would not hold the appellants harmless in this instance. Three of the six counts contained in the plaintiffs' second amended complaint (counts 4, 5, and 6) were unaffected by the directed verdict motions. Moreover, a directed verdict was granted with respect to all claims against one defendant (Sena), the district court stating that there was not "one bit of evidence" against him.

**7.** In any event, lawyers who accept plaintiffs' civil rights cases without charge to their clients know full well that if they prevail there will almost certainly be a fee award under applicable statutory law. *See, e.g.,* 42 U.S.C. § 1988; *see also de Jesus v. Banco Popular de Puerto Rico*, 918 F.2d 232, 234 (1st Cir.1990) (despite the discretionary language contained in § 1988,

the caselaw has made clear that "a court may not deny an award of attorney's fees to a prevailing civil rights plaintiff in the absence of special circumstances rendering the award unjust"). Thus, the characterization of the lawyers' efforts as *"pro bono"* lacks the moral fiber that appellants and the amici ascribe to it.

**8.** To be sure, we have occasionally taken the bull by the horns and, notwithstanding skimpy findings below, proceeded to adjudicate the merits of a fee application. Invariably, however, those appeals involved only a single question: how much should be awarded to a prevailing plaintiff? *See, e.g., Jacobs v. Mancuso*, 825 F.2d 559, 562 (1st Cir.1987); *Rogers v. Okin*, 821 F.2d 22, 31 (1st Cir.1987); *Hart*, 798 F.2d at 523; *Grendel's Den, Inc. v. Larkin*, 749 F.2d 945, 951

proving that the appellants could/could not be held liable for fees or other monetary sanctions in this case would entail running through all imaginable combinations of findings which the trial judge might conceivably have had in mind when making the award. We decline the invitation to engage in so profligate a waste of appellate resources. *Cf., e.g.,* S. Leacock, *Gertrude the Governess* 73 (1929) (discussing a character who "flung himself upon his horse and rode madly off in all directions").

In our view, remand is fairer, and makes far better sense. And, remand leaves open the possibility that the district court's eventual decision—whatever that decision proves to be—will be so convincing to the parties that none of them will choose to pursue an appeal. If that proves too sanguine a hope, we will then be able to review the ensuing challenge in a concrete setting, with a particular set of factual findings and legal conclusions, rather than having to rummage through the record and speculate as to what the district court could have had in mind.

### C.

In ordering a remand, we direct that the case be returned to the same judge. Having supervised the pretrial proceedings and presided at the trial, he is in the best position to render an informed judgment as to whether the defendants succeeded in showing an entitlement to fees; and if so, in gauging the extent of their entitlement and in allocating the burden of an award among the several potential targets. By remanding to Judge Harrington, we do not in any way suggest that the defendants' motion for fees should, or should not, be granted. To the contrary, we are confident that, given the circumstances, the district court will hold a hearing and consider, from scratch, whether an award is legally appropriate, explaining the basis for its conclusion.

If the district court determines that the defendants' motion should be granted, then

(1st Cir.1984). The instant appeal, with its proliferation of unanswered questions, is a much

it must, at a minimum, state whether it is ordering a fee-shifting award or a monetary sanction; identify the statute or rule on which the court's order is premised; designate the particular person(s) against whom the order is intended to run; describe the specific conduct giving rise to the award or sanction; and explain how any monetary amount has been calculated.

### III. CONCLUSION

Although this case exemplifies the inevitable tension between encouraging the prosecution of difficult civil rights cases and ensuring the maintenance of fairness and order in the judicial system through fee-shifting and the warranted imposition of sanctions, the current posture of the litigation permits us to comment on this important topic only in the abstract. We recognize, of course, that discrimination may often be subtle rather than notorious. Consequently, civil rights cases frequently hinge on difficult-to-prove issues such as the intent of the alleged discriminator. *See, e.g., Blue,* 914 F.2d at 544; *Kale v. Combined Ins. Co.,* 861 F.2d 746, 760 (1st Cir.1988). Because of the delicacy of proof in many such cases, plaintiffs will sometimes bring suits without much in the way of "hard" evidence. After discovery and exposure to the crucible of trial, some of these suits will pan out; others will not. In order not to chill the prosecution of well-founded suits, courts may legitimately consider the difficulties inherent in discrimination suits when they enforce rules which are designed to preserve the orderliness and efficiency of the judicial process.

 In this vein, the standard under which prevailing defendants in civil rights cases may become entitled to fees is, and should remain, difficult to meet. *See, e.g., Coates v. Bechtel,* 811 F.2d 1045, 1049 (7th Cir.1987). Unlike a prevailing civil rights plaintiff, whose entitlement to some reasonable fee comes almost as a matter of course, *see de Jesus v. Banco Popular de Puerto Rico,* 918 F.2d 232, 234 (1st Cir.

different breed of cat.

1990), a prevailing defendant can only receive a fee under 42 U.S.C. § 1988 if he or she demonstrates that the plaintiff's action was "frivolous, unreasonable, or groundless, or that the plaintiff continued to litigate after it clearly became so." *Christiansburg*, 434 U.S. at 422, 98 S.Ct. at 701. If prevailing defendants were allowed to recover fees as easily as prevailing plaintiffs, the underlying purpose of section 1988—the provision of incentives to enhance the prospect of prosecution in deserving civil rights cases—would be vitiated. *See Coates*, 811 F.2d at 1049.[9]

There is, however, a flip side to the coin. By shifting fees where warranted—or, for that matter, by sanctioning civil rights litigation that is frivolous and wasteful of judicial time—a judge actually benefits civil rights plaintiffs as a group by freeing up resources for worthy suits and protecting the integrity of the court as an institution. We agree entirely with the Fourth Circuit that:

> The authority which federal courts possess, an authority often summoned to the side of racial justice, is an authority built upon respect for judicial process. That authority cannot, in the long run, be effectively invoked on behalf of civil rights enforcement if civil rights litigants could themselves disregard it with impunity.

*Blue*, 914 F.2d at 535.

We need go no further. The tension between the competing concerns that are implicated here is best addressed case by case; and as previously indicated, we cannot effectively do so on the sparse record which is now before us. Thus, we sustain the appeal, vacate the order appealed from, and remand the cause for further proceedings consonant with this opinion, under the aegis of the judge who presided at the trial.

*Vacated and remanded. No fees or costs to any party, under 42 U.S.C. § 1988 or otherwise, for work in connection with this appeal.*

***

9. The considerations are somewhat different under Rule 11, but not entirely so. Nothing in Rule 11 prevents a court from weighing the inherent difficulties of proof placed upon a discrimination plaintiff when a sanctions motion is

## STATUTORY APPENDIX

### Part I

[I]t shall be unlawful—To refuse to sell or rent after the making of a bona fide offer, or to refuse to negotiate for the sale or rental of, or otherwise make unavailable or deny, a dwelling to any person because of race, color, religion, sex, familial status, or national origin.

42 U.S.C. § 3604(a).

It shall be unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed ... any right granted or protected by section ... 3604 ... of this title.

42 U.S.C. § 3617.

All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, ... and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens....

42 U.S.C. § 1981.

(1) Any person, other than a person entitled to bring action under section eleven of this chapter, who has been injured by another person's use or employment of any method, act or practice declared to be unlawful by [this statute] or any rule or regulation issued thereunder ... may bring an action in the superior court, or in the housing court ... for damages and such equitable relief, including an injunction, as the court deems to be necessary and proper.

Mass.Gen.L. ch. 93A, § 9(1).

Any person who engages in the conduct of any trade or commerce and who suffers any loss of money or property, real or personal, as a result of the use or employment by another person who engages in any trade or commerce of an unfair method of competition or an un-

***

made. *Cf. Kale*, 861 F.2d at 760 (acknowledging, in an age discrimination suit, that imposing Rule 11 sanctions runs the risk of chilling meritorious litigation).

fair or deceptive act or practice declared unlawful by [this statute] or by any rule or regulation issued under [the designated subsection of this statute] may, as hereinafter provided, bring an action in the superior court, or in the housing court ... for damages and such equitable relief, including an injunction, as the court deems to be necessary and proper.

Mass.Gen.L. ch. 93A, § 11.

### Part II

In any action or proceeding to enforce a provision of section[ ] 1981 ..., the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.

42 U.S.C. § 1988.

If a pleading, motion, or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion, or other paper, including a reasonable attorney's fee.

Fed.R.Civ.P. 11.

Upon motion of any party in any civil action in which a finding, verdict, decision, award, order or judgment has been made by a judge or ... other finder of fact, the court may determine, after a hearing, as a separate and distinct finding, that all or substantially all of the claims, defenses, setoffs or counterclaims, whether of a factual, legal or mixed nature, made by any party who was represented by counsel during most or all of the proceeding, were wholly insubstantial, frivolous and not advanced in good faith. The court shall include in such finding the specific facts and reasons on which the finding is based.

If such a finding is made with respect to a party's claims, the court shall award to each party against whom such claims were asserted an amount representing the reasonable counsel fees and other costs and expenses incurred in defending against such claims....

\* \* \* \* \* \*

In any award made pursuant to either of the preceding paragraphs, the court shall specify in reasonable detail the method by which the amount of the award was computed and the calculation thereof.

\* \* \* \* \* \*

Mass.Gen.L. ch. 231, § 6F.