UNITED STATES COURT OF APPEALS UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT FOR THE FIRST CIRCUIT



No. 97-1128

DENISE COUTIN, ET AL.,

Plaintiffs, Appellants,

v.

YOUNG & RUBICAM PUERTO RICO, INC.,

Defendant, Appellee.



APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Salvador E. Casellas, U.S. District Judge] 



Before

Selya, Circuit Judge, 

Gibson,* Senior Circuit Judge, 

and Lynch, Circuit Judge. 



Jorge Miguel Suro Ballester for appellants. 
Etienne Totti Del Valle, with whom Totti & Rodriguez Diaz 
was on brief, for appellee.



September 8, 1997




*Hon. John R. Gibson, of the Eighth Circuit, sitting by
designation.

SELYA, Circuit Judge. Plaintiff-appellant Denise SELYA, Circuit Judge. 

Coutin,1 flush with victory after winning an employment

discrimination suit, encountered disappointment when the district

court awarded her only a fraction of the attorneys' fees to which

she believed herself entitled under the Fees Act, 42 U.S.C. 

1988 (1994). Coutin appeals. Because the district court

employed a flawed methodology and relied on impermissible

criteria, we vacate its order and remand for further proceedings.

I. BACKGROUND I. BACKGROUND

On December 30, 1993, the appellant sued her former

employer, defendant-appellee Young & Rubicam of Puerto Rico, Inc.

(Y&R), an advertising agency, for over $1,500,000 in compensatory

and punitive damages. Her complaint advanced one substantive

federal claim: that Y&R had violated Title VII of the Civil

Rights Act of 1964, 42 U.S.C. 2000e to 2000e-17 (1994),

including the Pregnancy Discrimination Act, 42 U.S.C. 2000e(k)

(1994), by (1) assigning Coutin (who was then pregnant) to tasks

that were detrimental to her physical and emotional health, (2)

requiring her to work under unsafe conditions, (3) condoning (or,

at least, neglecting to curb) her coworkers' disparaging comments

about her gravidity, and (4) constructively discharging her. The

complaint also included several claims under local law, the

elements of which were subsumed, without exception, under the

 

1Coutin's spouse and their conjugal partnership are also
plaintiffs and appellants in this litigation. Because their
rights derive from Coutin's, we opt for simplicity and treat the
appeal as if Coutin were the sole plaintiff and appellant.

2

broader federal claim.

Y&R denied Coutin's allegations and defended the suit

with considerable vigor. Along the way, the parties attempted to

reach an accord, but they came no closer than a demand of

$150,000 as against an offer of $15,000. At trial, the appellant

(who had secured and retained other employment) offered no

evidence of lost income, and that aspect of her original claim

was pretermitted. The case went to the jury, which found that

Y&R had intentionally discriminated against, and constructively

discharged, the appellant, thus violating both federal and Puerto

Rico law. The jury awarded the appellant and her spouse a total

of $44,000 in compensatory damages, plus an additional $1,538 in

severance pay under Law 80, P.R. Laws Ann. tit. 29, 185a

(1985). The jury rejected the appellant's prayer for punitive

damages.

Y&R, which had moved unsuccessfully for judgment as a

matter of law on several occasions during the trial, renewed that

motion and asked alternatively for a new trial. See Fed. R. Civ. 

P. 50, 59. The district court refused relief. In turn, the

appellant petitioned under 42 U.S.C. 1988 for an award of

$52,793.75 in counsel fees and related expenses. The fee

application contained a sworn statement delineating her lawyer's

two decades of experience in personal injury, labor, and

discrimination cases, as well as extensive, contemporaneous

billing records that detailed the lawyer's work over four

calendar years. At the bottom line, the reckoning reflected out-

3

of-court time (250.25 hours) billed at $175 per hour and in-court

time (45 hours) billed at $200 per hour.

Despite this meticulous proffer, the judge eschewed any

discussion of either the hours spent or the billing rates

assigned and instead awarded the appellant a mere $5,000 in fees.

The judge purported to base his decision entirely on the

"plaintiffs' limited success on their claims, the plaintiffs'

willingness to go to trial despite the defendant's earnest

efforts to settle the case for a reasonable sum, and the equities

involved."2 This appeal ensued.

II. STANDARD OF REVIEW II. STANDARD OF REVIEW

We review fee awards deferentially, according

substantial respect to the trial court's informed discretion.

See Brewster v. Dukakis, 3 F.3d 488, 492 (1st Cir. 1993). We 

will disturb such an award only for mistake of law or abuse of

discretion. See United States v. Metropolitan Dist. Comm'n, 847 

F.2d 12, 14 (1st Cir. 1988). In this regard, an abuse of

discretion occurs "when a material factor deserving significant

weight is ignored, when an improper factor is relied upon, or

when all proper and no improper factors are assessed, but the

 

2While the court did not elaborate upon the phrase "equities
involved," it is apparently a euphemism for the judge's view that
the appellant had been fortunate to secure a verdict, and that a
large fee award therefore "would constitute an intolerable
windfall." We proceed on the assumption that this is what the
judge meant. In all events, if the judge was referring to
"equities" in a broader sense, those equities, to the extent that
they bear on attorney compensation, are encompassed within the
standard fee-adjustment factors. See infra note 3 and 
accompanying text.

4

court makes a serious mistake in weighing them." Foster v. Mydas 

Assocs., Inc., 943 F.2d 139, 143 (1st Cir. 1991) (internal 

quotation marks and citation omitted).

Although our analytical posture is respectful, we

nonetheless must engage the district court's decision critically.

To facilitate this perlustration, we require the lower court to

explain its actions. See id. at 141. The explanation need not 

be painstaking, and, sometimes, it may even appear by

implication, but at a bare minimum, the order awarding fees, read

against the backdrop of the record as a whole, must expose the

district court's thought process and show the method and manner

underlying its decisional calculus. See Blum v. Stenson, 465 

U.S. 886, 898 (1984); Hensley v. Eckerhart, 461 U.S. 424, 437 

(1983).

This principle is especially important when the fee

award departs substantially from the contours shaped by the

application. "As a general rule, a fee-awarding court that makes

a substantial reduction in either documented time or

authenticated rates should offer reasonably explicit findings,

for the court, in such circumstances, `has a burden to spell out

the whys and wherefores.'" Brewster, 3 F.3d at 493 (quoting 

Metropolitan Dist. Comm'n, 847 F.2d at 18)). An appellate court 

deprived of meaningful insight into the trial court's thinking

frequently will be unable to conduct an adequate review of a

significantly adjusted fee award, and thus will be compelled to

remand for further findings. See, e.g., Riley v. City of 

5

Jackson, 99 F.3d 757, 760 (5th Cir. 1996); Freeman v. Franzen, 

695 F.2d 485, 494 (7th Cir. 1982).

III. METHODOLOGY III. METHODOLOGY

The lodestar method is the strongly preferred method

by which district courts should determine what fees to award

prevailing parties in actions that fall within the ambit of

section 1988. See Lipsett v. Blanco, 975 F.2d 934, 937 (1st Cir. 

1992). This approach contemplates judicial ascertainment of "the

number of hours reasonably expended on the litigation multiplied

by a reasonable hourly rate" as the starting point in

constructing a fee award. Hensley, 461 U.S. at 433. While the 

lodestar method is a tool, not a straitjacket as we have

acknowledged, some deviation from an orthodox application of the

method is permissible in highly unusual situations, see 

Metropolitan Dist. Comm'n, 847 F.2d at 15-16 a fee-awarding 

court shuns this tried-and-true approach at its peril. See Segal 

v. Gilbert Color Sys., Inc., 746 F.2d 78, 87 (1st Cir. 1984). As 

we have said, the lodestar method is a tool, but it is not merely

a tool. The method is also a device which enables courts to pay

homage to the fundamental reason that Congress passed the Fees

Act: its resolve that certain types of wrongs, such as

discrimination on account of sex, should not be countenanced, and

that private suits aimed at redeeming such abuses should be

encouraged. See City of Riverside v. Rivera, 477 U.S. 561, 574- 

75 (1986) (plurality opinion).

To say that a trial court mulling a fee request

6

ordinarily must fashion a lodestar is not to say that the court

is in thrall to an attorney's time records. The court can

segregate time spent on certain unsuccessful claims, see, e.g., 

Hensley, 461 U.S. at 435, eliminate excessive or unproductive 

hours, see, e.g., Lipsett, 975 F.2d at 937, and assign more 

realistic rates to time spent, see, e.g., Brewster, 3 F.3d at 

492. In these and other ways, the trial court, though adhering

to the time-and-rate-based method of fee calculation, may fashion

a lodestar which differs substantially from the fee requested by

the prevailing party. Moreover, the trial court retains the

authority to adjust the lodestar after initially computing it 

but it must do so in accordance with accepted principles. See 

Hensley, 461 U.S. at 429-31 (citing the legislative history of 

the Fees Act and observing that it is appropriate to adjust fees

in accordance with the twelve factors set forth in Johnson v. 

Georgia Highway Express, Inc., 488 F.2d 714, 717-19 (5th Cir. 

1974)).3

IV. ANALYSIS IV. ANALYSIS

In this instance, Coutin submitted the documentation
 

3This circuit has embraced the Johnson factors for use in 
sculpting fee awards. See, e.g., Segal, 746 F.2d at 86. These 
factors are: (1) the time and labor required; (2) the novelty
and difficulty of the questions; (3) the skill requisite to
perform the legal services properly; (4) the preclusion of other
employment by the attorney(s) due to acceptance of the case; (5)
the customary fee; (6) the nature of the fee (fixed or
contingent); (7) the time limitations imposed by the client or
the circumstances; (8) the amount involved and the results
obtained; (9) the experience, reputation, and ability of the
attorney(s); (10) the "undesirability" of the case; (11) the
nature and length of the professional relationship with the
client; and (12) the size of awards in similar cases.

7

needed to permit the district court to follow the conventional

approach, but the court scarcely mentioned that proffer and, in

all events, did not engage in any lodestar analysis whatever.

While such a departure from preferred practice will not

necessarily be fatal, spurning all consideration of a lodestar

places a substantial burden upon the district court to account

for its actions. See Berg v. Gackenbach, 966 F.2d 731, 732 (2d 

Cir. 1992); Metropolitan Dist. Comm'n, 847 F.2d at 12, 15. 

Here, the district court did not cite any reason for

abjuring the lodestar method. Still, the court did make an

effort to explain its decisionmaking process, indicating that it

had premised its decision on three factors: the appellant's

limited success, the parties' abortive efforts to settle the

case, and the equities of the situation. But the court's

reliance on the first of these factors is at best insufficiently

explained, and its reliance on the other two factors is plainly

wrong. Moreover, none of these factors justifies the court's

failure to compute (and then adjust, if necessary) a lodestar.

A. Limited Success. A. Limited Success. 

The district court's conclusion that the appellant

enjoyed only "limited success" (and, thus, deserved less in the

way of counsel fees) is too much of a stretch. To be sure, as

the court pointed out, there was a chasmal gulf between the

damages requested in the complaint and the damages awarded.4 The
 

4In making this comparison, the court emphasized the ad
damnum. The use of the ad damnum for this purpose is suspect
because the ad damnum is an inherently artificial construct. See 

8

court had a right to keep this discrepancy in mind, but it cannot

amount to more than one element in the constellation of factors

that the court considers when determining the quality of the

results obtained. Because this phenomenon is sometimes

misunderstood, we take some pains to explain it.

As Judge Casellas correctly noted, the Supreme Court

has identified results obtained as a preeminent consideration in

the fee-adjustment process. See Hensley, 461 U.S. at 432, 440. 

But the term "results obtained" has a variety of meanings. It

can refer to a plaintiff's success claim by claim, or to the

relief actually achieved, or to the societal importance of the

right which has been vindicated, or to all of these measures in

combination. We think that the last meaning is the best choice,

and that, as a consequence, all three types of "results"

potentially bear upon the amount of an ensuing fee award. See 

generally Norman v. Housing Auth. of Montgomery, 836 F.2d 1292, 

1302 (11th Cir. 1988).

Although all three measures of success must be factored

into the fee-reduction calculus, they do not lend themselves to

identical treatment. On the one hand, to the extent that fee

adjustments are intended to reflect the success or failure of

severable claims, they are relatively easy to calculate because,

although some overlap may muddy the waters, a court usually can

 

Aggarwal v. Ponce Sch. of Med., 745 F.2d 723, 729 (1st Cir. 1984) 
(observing that "[m]odern litigation practices being what they
are, the monetary demand which caps a plaintiff's complaint is
likely to be sanguine at best").

9

determine the extent to which a plaintiff has prevailed on her

claims merely by perusing the docket (e.g., the complaint, the

verdict form, etc.), and can then filter out time spent on

unsuccessful claims. See, e.g., Lipsett, 975 F.2d at 940-41. On 

the other hand, a fee reduction in response to a scanty damage

award or a shortfall in other relief entails a subjective

evaluation of damages awarded and nonmonetary relief obtained,

and is substantially more difficult to quantify.5 Seen in this

light, the computational principles applicable to claims-based

fee reductions are relatively simple and straightforward, whereas

the computational principles applicable to relief-based fee

reductions are highly ramified and, in some respects, operate at

cross purposes. To visualize how these sometimes competing

principles may affect a district court's effort to determine a

"reasonable" fee, it may be helpful to catalog the several

possible configurations in which the issue may arise.

1. If a plaintiff prevails on only some of multiple 1.

claims, then a fee reduction may be in order. To guide

decisionmaking in this situation, the Justices have suggested two

relevant questions: "First, did the plaintiff fail to prevail on

claims that were unrelated to the claims on which he succeeded?

Second, did the plaintiff achieve a level of success that makes

the hours reasonably expended a satisfactory basis for making a

fee award?" Hensley, 461 U.S. at 434. 
 

5This is equally true of the vindication of rights (which,
to the extent it may be relevant here, plainly cuts against a
reduction in fees).

10

When different claims for relief are not interconnected

that is, when the claims rest on different facts and legal

theories they are by definition severable and unrelated.

Attorneys' fees normally should not be awarded for time spent in

litigating (or preparing to litigate) unsuccessful, severable

claims. See id. at 435; Lipsett, 975 F.2d at 940. 

2. If a plaintiff prevails on an insubstantial subset 2.

of her interrelated claims and obtains only limited relief, the

trial court has discretion to shrink fees to reflect that

inferior result. See Hensley, 461 U.S. at 436; Andrade v. 

Jamestown Hous. Auth., 82 F.3d 1179, 1191 (1st Cir. 1996). 

Withal, a plaintiff who has limited success from a claim-by-claim

standpoint, but who nevertheless obtains substantial compensation

or other important relief, usually will fare much better in the

fee wars, even though some of her claims failed. See, e.g., 

Hensley, 461 U.S. at 440 ("Where a lawsuit consists of related 

claims, a plaintiff who has won substantial relief should not

have his attorney's fee reduced simply because the district court

did not adopt each contention raised.").

3. If a prevailing party is successful on all (or 3.

substantially all) of her claims, and receives complete (or near-

complete) relief, it goes without saying that reasonable fees

should be paid for time productively spent, without any discount

for limited success.

4. If a prevailing party succeeds on all (or 4.

substantially all) of her claims, but receives no significant

11

relief (e.g., the jury awards only nominal damages), the trial

judge sometimes may deny fees altogether because this scenario

often "highlights the plaintiff's failure to prove actual,

compensable injury." Farrar v. Hobby, 506 U.S. 103, 115 (1992) 

(denying fees in a case in which the plaintiff sought $17,000,000

in damages and received $1); see also id. at 114 (affirming that 

"the `technical' nature of a nominal damages award or any other

judgment . . . does bear on the propriety of fees awarded under 

1988"). Farrar, then, signifies that fees need not be bestowed 

if the plaintiff's apparent victory is "purely technical or de 

minimis." Id. at 117 (O'Connor, J., concurring).6 

5. Sometimes, the plaintiff will prevail on all her 5.

claims, but will receive limited (though not insubstantial)

redress. In such circumstances, it is appropriate for a trial

court to consider the skimpiness of the relief when adjusting the

lodestar figure. See Rivera, 477 U.S. at 574. But though a 

meager damage award may be taken into consideration, the Court

has squarely disclaimed "the proposition that fee awards under 

1988 should necessarily be proportionate to the amount of damages

a civil rights plaintiff actually recovers." Id. (approving 

$245,456.25 in fees in a section 1983 action that resulted in a
 

6Be that as it may, obtaining only nominal damages does not
negate the possibility of a fee award. For example, if the
plaintiff receives another form of meaningful relief, then the
"results obtained" may be substantial, notwithstanding the
plaintiff's failure to collect compensatory damages. See 
O'Connor v. Huard, 117 F.3d 12, 17-18 (1st Cir. 1997) (affirming 
a substantial attorneys' fee award in a section 1983 action in
which the plaintiff received nominal damages and injunctive 
relief).

12

judgment for $33,350); see also id. at 585 (Powell, J., 

concurring) (noting that "[n]either the decisions of this Court

nor the legislative history of 1988" lend credence to a "rule

of proportionality between the fee awarded and the damages

recovered in a civil rights case"); Foley v. City of Lowell, 948 

F.2d 10, 19 (1st Cir. 1991) (holding that although a trial court

is "entitled to take into account the relative size of the damage

award and the fee award," the former "does not constitute a

dispositive criterion, or even a ceiling" on the latter).

It is readily apparent that some tension exists between

these principles: while a judge may not automatically reduce a

fee award in proportion to a judgment that is significantly less

than the plaintiff sought, the judge can take that small judgment

into reasonable account in massaging the lodestar. This

dissonance makes it all the more crucial that a nisi prius court

provide a clear explanation when limited relief furnishes the

ostensible justification for a departure from the lodestar.

Conscious of these differing configurations, we turn to

the case at hand. The focus of our inquiry is the lower court's

determination that the appellant's success was limited (and,

thus, justified a fee reduction).

We start by scrutinizing claims-based success. Y&R

asserts that Coutin's victory was less than complete both because

the jury declined to grant punitive damages and because the

appellant did not pursue her original prayer for lost income. We

believe that this riposte blurs the distinction between claims

13

and damages. In the fee-shifting context, a "claim" is an

allegation of a legal injury comprised of various elements and

equivalent to a cause of action, whereas "damages" are the

compensation awarded to the plaintiff who has suffered a legal

wrong and who therefore has a valid claim against the defendant.

In this case, punitive damages and loss of income (no matter how

they are denominated in the complaint) are not failed claims, but

are categories of relief that the jury and the appellant's

subsequent employment history, respectively, have denied her.

We need not linger. From a claim-by-claim standpoint,

the appellant prevailed up and down the line. She triumphed on

every substantive claim asserted under both federal and Puerto

Rico law. In so doing, she achieved a 100% success rate and

complete success is hardly "limited." Consequently, a claims-

based, results-obtained fee reduction is wholly inappropriate.

From the standpoint of relief obtained, the situation

is more ambiguous. After all, it remains within the district

court's discretion to reduce a fee award in response to limited

relief even in the presence of complete claims-based success.

See, e.g., Cartwright v. Stamper, 7 F.3d 106, 109-10 (7th Cir. 

1993) (declining to award fees where plaintiff succeeded on all

claims, but received only nominal damages for each). Here,

however, the damage award is substantial in absolute terms over

$45,000 and equals roughly three times the appellant's annual

salary. On its face, such relief does not seem "limited" in any

relevant sense.

14

Moreover, to the extent if at all that the ratio of

the damages requested to the judgment received may be taken into

account in fixing an appropriate award, see Foley, 948 F.2d at 

19-20 ("Often, when the amount sought is large but the actual

recovery is small, fees may be reduced somewhat."); see also 

Loggins v. Delo, 999 F.2d 364, 369 (8th Cir. 1993), this 

proportion may be used only as one facet of the trial court's

determination of the quality of the results obtained. The court

may not employ the derived ratio as an independent justification

for a fee reduction. See Rivera, 477 U.S. at 574. Rather, in 

the absence of special circumstances, the court must evaluate the

data submitted by the fee-seeker, compute a lodestar, consider

the totality of the adjustment factors approved by Congress and

the Court, see supra note 3, and make specific, reasoned 

adjustments if it is to arrive at a reduced fee award.

In the instant case, the court did not analyze the

appellant's time-and-rate data; it ignored the appellant's broad

claims-based success; and it failed to explain why the sum upon

which it settled $5,000 was itself reasonable in relation to

counsel's efforts, even given a perceived shortfall in the relief

received. Thus, the more than 90% fee reduction that the court

imposed cannot be justified on the basis of limited success.7
 

7The district court's reliance on Andrade (a case in which 
the trial judge ordered, and this court approved, a reduction in
fees from $26,487.50 to $2,500) is misplaced. There, the
plaintiffs obtained limited claims-based success and limited 
relief. See Andrade, 82 F.3d at 1191. In contrast, Coutin 
obtained substantial claims-based success and rather substantial
relief. Hence, Andrade and this case are not fair congeners. 

15

B. Settlement Prospects. B. Settlement Prospects. 

In other instances, inquiry into the course of

settlement negotiations may yield information that is useful in

determining fees. See Marek v. Chesny, 473 U.S. 1, 11-12 (1985) 

(applying Fed. R. Civ. P. 68 in a civil rights context). In the

case at bar, however, the defendant did not invoke Rule 68 and,

in any event, the judgment that the plaintiff obtained more than

trebled the highest settlement offer available to her. This

success validates the appellant's rejection of the tendered

settlement and immunizes her from detrimental consequences based

upon that rejection. See Corder v. Gates, 947 F.2d 374, 380-81 

(9th Cir. 1991).

Policy considerations militate strongly against

relaxing this rule. Permitting a district court to reduce a fee

award for failure to settle when the eventual judgment exceeds

the best settlement offer previously made by the losing party

would put too large a club in the district court's hands. In the

bargain, endorsing that praxis would create inordinate pressure

on plaintiffs to accept low settlement offers. This result would

inhibit the bringing of civil rights actions, and, in the end,

frustrate Congress's manifest intention that the Fees Act

facilitate the prosecution of private actions aimed at deterring

civil rights abuses. See Rivera, 477 U.S. at 574-75. We 

therefore hold that it is a mistake of law to reduce an award of

attorneys' fees in a civil rights case in response to a

plaintiff's rejection of a defendant's settlement offer when the

16

subsequent judgment exceeds that offer.8

C. Windfall. C. Windfall. 

The district court's opinion suggests that a fee

reduction is appropriate because the appellant had a shaky case

and did not deserve to prevail on the merits. See supra note 2. 

Wholly apart from the accuracy vel non of the district court's 

assessment, this criterion is not a proper element of the fee-

award calculus.

Congress intended the Fees Act to effect attorney

compensation in virtually all cases involving successful civil

rights claims.9 See generally S. Rep. No. 94-1011 (1976), 

reprinted in 1976 U.S.C.C.A.N. 5908; see also Williams v. Hanover 

Hous. Auth., 113 F.3d 1294, 1300 (1st Cir. 1997). After a jury's 

verdict has been rendered and has withstood whatever barrage of

post-trial motions may ensue, the time for debate has expired.

It is an abuse of discretion for the trial court thereafter to

vent its skepticism about the claimant's right to recover by

reducing the fee award to which the prevailing party is entitled.

See Stefan v. Laurenitis, 889 F.2d 363, 370-71 (1st Cir. 1989) 

 

8This case does not present the somewhat different question
of whether a fee award in a civil rights action might be subject
to reduction, apart from Rule 68, because the prevailing
plaintiff received a damage award which was less than the
defendant had offered in settlement. We leave that question for
another day.

9Despite this policy interest, we have determined that
counsel fees may be withheld altogether if special circumstances
exist. See Domegan v. Ponte, 972 F.2d 401, 419 (1st Cir. 1992); 
Lewis v. Kendrick, 944 F.2d 949, 957-58 (1st Cir. 1991). Such 
circumstances are rare. They are not present here.

17

(refusing to allow district courts to balance equities of this

sort when considering whether to award attorneys' fees under

section 1988); see also DeJesus v. Banco Popular, 918 F.2d 232, 

235 (1st Cir. 1990). In other words, the time for a trial judge

to express his doubts about the viability of a claim occurs when

the judge rules upon the full panoply of motions for judgment as

a matter of law and/or for a new trial. Once a case has scaled

those barriers and this case has trimming attorneys' fees

cannot be employed as a palliative to assuage lingering doubts

about the legal viability of the claim. See DeJesus, 918 F.2d at 

235. Indeed, if a plaintiff has a thin case but nonetheless

manages, as here, to secure a verdict for three times the largest

settlement offer, such a template suggests skillful advocacy,

perhaps worthy of an award of full fees.

D. Local Law. D. Local Law. 

Wholly apart from the district court's rationale, Y&R

has a fallback position. It posits that, whatever the

infirmities of the $5,000 fee award under federal law, the award

comports with Puerto Rico law and should be sustained on that

basis. This thesis, which proposes that Puerto Rico law should

govern in respect to fees because the appellant prevailed on her

non-federal claims and recovered double damages by operation of

Puerto Rico law, fails for two reasons.

First, under section 1988 "the plaintiff is entitled to

fees for hours worked not only on the successful civil rights

claims, but also on other claims involving a `common core of

18

facts' or `related legal theories,'" and, therefore, a "plaintiff

should receive significant fees when he has won a partial victory 

on a civil rights claim while receiving substantially the relief

he there sought, though the jury awards it on a factually or

legally related pendent state claim." Aubin v. Fudala, 782 F.2d 

287, 291 (1st Cir. 1986) (quoting Hensley, 461 U.S. at 435).10 

Here, where the elements of the various claims under Puerto Rico

law are subsumed by the Title VII claim, the claims are

unquestionably interrelated. Hence, the fact that the appellant

also recovered under Puerto Rico law is irrelevant vis- -vis her

section 1988 recovery.

Second, as a general matter, a plaintiff who prevails

on congruent federal and state claims and qualifies for fee-

shifting under two or more statutes may recover fees under

whichever fee-shifting regime she chooses. See Freeman v. 

Package Mach. Co., 865 F.2d 1331, 1347 (1st Cir. 1988). To 

constrain the plaintiff's choice would withhold from her the

deserved fruits of her victory and would discourage potential

claimants from redeeming their civil rights.

V. CONCLUSION V. CONCLUSION

We need go no further. The court below offered no

plausible reason for eschewing the lodestar method, and no such

 

10In Aubin, the plaintiff prevailed on interrelated federal 
and state claims, recovering $501 on the former and $300,000 on
the latter. 782 F.2d at 288. The district court reduced the
requested attorneys' fees on a theory much like that advanced by
Y&R. See id. at 290. We overturned that ruling. See id. at 
292.

19

reason springs spontaneously from the record. It was, therefore,

error to forgo the lodestar. In addition, the court relied on

impermissible criteria in making its non-lodestar fee award.

Consequently, we vacate the order appealed from and remand for

further proceedings consistent with this opinion. Costs on

appeal shall be taxed in favor of the appellant. Upon the timely

filing of a supplemental application in suitable form, the

district court shall include in its new fee award a sum

sufficient to compensate the appellant's counsel for services

rendered in connection with the successful prosecution of this

appeal.

It is so ordered. It is so ordered. 

20