**Rosalyn ASBURY, Plaintiff–Appellee,**

v.

**Leo BROUGHAM, an individual and d/b/a Brougham Estates and Brougham Management Company, and Wanda Chauvin, an individual, Defendants–Appellants.**

**No. 86–1877.**

United States Court of Appeals, Tenth Circuit.

Jan. 30, 1989.

---

Gregory Bernard King, Kansas City, Kan., for plaintiff-appellee.

George Maier, Kansas City, Kan. (Edward H. Powers, Sr., Kansas City, Kan., with him on brief), for defendants-appellants.

Before ANDERSON, BALDOCK, Circuit Judges and PARKER, District Judge [*].

PARKER, District Judge.

Plaintiff Rosalyn Asbury brought suit under 42 U.S.C. § 1982[1] and the Fair Housing Act, 42 U.S.C. § 3601 *et seq* (FHA),[2] claiming that the defendants refused to rent or to allow her to inspect or negotiate for the rental of an apartment or townhouse at Brougham Estates in Kansas City. Defendants Leo Brougham, individually and doing business as Brougham Estates and Brougham Management Company, and Wanda Chauvin, his employee, appeal a jury verdict awarding Asbury com-

---

[*] The Honorable James A. Parker, United States District Judge for the District of New Mexico, sitting by designation.

1. 42 U.S.C. § 1982 provides that "[a]ll citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, convey real and personal property."

2. 42 U.S.C. § 3604 provides that
... it shall be unlawful—
(a) To refuse to sell or rent after the making of a bona fide offer, or to refuse to negotiate for the sale or rental of, or otherwise make unavailable or deny, a dwelling to any person because of race, color, religion, sex, or national origin.
(b) To discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, or national origin....
(d) To represent to any person because of race, color, religion, sex or national origin that any dwelling is not available for inspection, sale, or rental when such dwelling is in fact so available.

pensatory damages of $7,500 against them upon a finding that the defendants discriminated against her on the basis of race and/or sex.[3] Leo Brougham appeals from the jury verdict awarding punitive damages in the amount of $50,000 solely against him. Defendants contend that the jury verdict awarding compensatory damages is unsupported by the evidence because it failed to establish an intent to discriminate. Defendant Leo Brougham appeals the award of punitive damages on the additional ground that any discriminatory motivation that the jury may have found on the part of Wanda Chauvin could not be attributed to Brougham, on whose behalf she managed leasing of apartments and townhouses at Brougham Estates. The defendants argue, therefore, that the district court erred by denying their motion for a new trial.

## I. Sufficiency of Evidence Supporting a Finding of Racial Discrimination in Violation of § 1982 and FHA.

 42 U.S.C. § 1982 and the FHA both prohibit discrimination on the basis of race. In order to prevail on a claim made under these statutes, plaintiff must prove a discriminatory intent. *Denny v. Hutchinson Sales Corp.*, 649 F.2d 816, 822 (10th Cir.1981). A violation occurs when race is a factor in a decision to deny a minority applicant the opportunity to rent or negotiate for a rental, but race need not be the only factor in the decision. *Steele v. Title Realty Co.*, 478 F.2d 380, 383 (10th Cir. 1973). In addition, § 3604(d) of the FHA specifically prohibits dissemination of false information about the availability of housing because of a person's race. Accordingly, failure to provide a minority applicant with the same information about availability of a rental unit or the terms and condi-

tions for rental as is provided to white "testers," results in false information being provided and is cognizable as an injury under the FHA. *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 102 S.Ct. 1114, 71 L.Ed.2d 214 (1982).

### A. Asbury's Prima Facie Case under § 1982 and FHA.

The three-part burden of proof analysis established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), a Title VII employment discrimination case, has been widely applied to FHA and § 1982 claims. *E.g., Robinson v. 12 Lofts Realty, Inc.*, 610 F.2d 1032 (2d Cir.1979); *Phiffer v. Proud Parrot Motor Hotel*, 648 F.2d 548, 551 (9th Cir.1980); *see also, Denny v. Hutchinson Sales Corp.*, 649 F.2d 816, 822–23 (10th Cir.1981) (§ 1982). Under the *McDonnell Douglas* analysis, plaintiff first must come forward with proof of a prima facie case of discrimination. Second, if plaintiff proves a prima facie case, the burden shifts to defendants to produce evidence that the refusal to rent or negotiate for a rental was motivated by legitimate, non-racial considerations. *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 254–55, 101 S.Ct. 1089, 1094–95, 67 L.Ed.2d 207 (1981). Third, once defendants by evidence articulate non-discriminatory reasons, the burden shifts back to plaintiff to show that the proffered reasons were pretextual. *Id.* at 256, 101 S.Ct. at 1095.

 The proof necessary to establish a prima facie case under the FHA also establishes a prima facie case of racial discrimination under § 1982. *Selden Apartments v. U.S. Dept. of Housing & Urban Development*, 785 F.2d 152, 159 (6th Cir.1986); *Robinson v. 12 Lofts Realty, Inc.*, 610 F.2d 1032 (2d Cir.1979). In order to establish

---

**3.** The basis of liability is not clear from the jury verdict. § 1982 prohibits discrimination on the basis of race; the FHA forbids discrimination on the basis of race and gender. The verdict form did not require the jury to make a specific finding as to whether the discrimination was based on race or gender. Defendants did not object to the form of verdict and did not request special interrogatories that would have asked the jury to specify the type of discrimination

that occurred. As discussed in the opinion, the evidence indicates a substantial basis for the jury's determination of racial discrimination. A finding of racial discrimination under § 1982 was necessary to support the jury award of $50,000 punitive damages because the maximum punitive damages allowed by the FHA are $1,000. 42 U.S.C. § 3612(c). Consequently, it is not necessary to analyze the evidence with reference to the claim of gender discrimination.

her prima facie case, plaintiff had to prove that:

(1) she is a member of a racial minority;

(2) she applied for and was qualified to rent an apartment or townhouse in Brougham Estates;

(3) she was denied the opportunity to rent or to inspect or negotiate for the rental of a townhouse or apartment; and

(4) the housing opportunity remained available. *Selden Apartments,* 785 F.2d at 159; *Robinson,* 610 F.2d at 1038.

■ A review of the evidence in this case shows that plaintiff established her prima facie case. Defendants stipulated that Asbury is black. Plaintiff testified that on February 23, 1984, she went to Brougham Estates with her daughter to obtain rental housing. R. Vol. II at 29. At the rental office at Brougham Estates, Asbury encountered Wanda Chauvin, the manager,[4] and explained to Chauvin that she was being transferred to Kansas City and needed to rent housing. R. Vol. II at 29–30. Asbury told Chauvin that she needed to secure housing by the middle of March or the beginning of April. R. Vol. II at 30. In response, Chauvin said there were no vacancies, R. Vol. II at 30, but told Asbury she could call back at a later time to check on availability. R. Vol. II at 33. Chauvin provided no information concerning availability of rental units that would assist Asbury in her efforts to rent an apartment or townhouse at Brougham Estates. R. Vol. II at 32. Asbury asked for the opportunity to fill out an application, but Chauvin did not give her an application, again stating that there were no vacancies and that she kept no waiting list. R. Vol. II at 33. Asbury also requested floor plans or the opportunity to view a model unit, and Chauvin refused. R. Vol. II at 31. Instead, Chauvin suggested Asbury inquire

at the Westminister Apartments, R. Vol. II at 33, an apartment complex housing mostly black families. R. Vol. III at 3–4. Although Chauvin did not ask Asbury about her qualifications, plaintiff was employed with the Federal Aviation Authority at a salary of $37,599. R. Vol. II at 25. Based on her salary, defendants concede that Asbury would likely be qualified to rent an apartment or townhouse at Brougham Estates. Brief of Appellants at 8.

Defendants argue that Asbury was not rejected because Chauvin courteously invited her to call back. However, there is ample evidence in the record to support the jury's finding that defendants' failure or refusal to provide Asbury the opportunity to rent or inspect or negotiate for the rental of a townhouse or apartment constituted a rejection because of her race cognizable under § 1982 and the FHA.

■ Although there was a conflict in the evidence as to the availability of housing at the time Asbury attempted to inspect and negotiate for rental, there was abundant evidence from which the jury could find that housing was available. Defendants testified that families with a child are housed exclusively in the townhouses at Brougham Estates, and that there were no townhouses available on the date Asbury inquired. Asbury introduced evidence suggesting that both apartments and townhouses were available and, in addition, that exceptions previously had been created to allow children to reside in the apartments.

On February 24, 1984, the day after Asbury inquired about renting, Asbury's sister-in-law, Linda Robinson, who is white, called to inquire about the availability of two-bedroom apartments. R. Vol. II at 76. The woman who answered the telephone identified herself as "Wanda" and invited Robinson to come to Brougham Estates to

---

**4.** Although there is some dispute in the record concerning the precise relationship between Chauvin and Brougham, Chauvin worked for Brougham on a commission basis, and he specifically referred to her as his employee and rental agent. R. Vol. II at 104. As discussed elsewhere in the opinion, Brougham's liability arises directly from establishing discriminatory policies and procedures. In addition, discrimi-

natory conduct on the part of Chauvin in her capacity as Brougham's rental agent or employee is attributable to Brougham as owner and managing partner of Brougham Estates. *Phiffer v. Proud Parrot Motor Hotel, Inc.,* 648 F.2d 548, 552 (9th Cir.1980) ("The duty of the owner ... to obey the laws relating to racial discrimination is non-delegable.")

view the apartments. R. Vol. II at 76–77. The following day, February 25, 1984, Robinson went to the rental office at Brougham Estates and met with Wanda Chauvin. R. Vol. II at 77–78. Chauvin provided Robinson with floor plans of available one- and two-bedroom apartments at Brougham Estates. R. Vol. II at 78–79. Robinson specifically asked Chauvin about rental to families with children, and Chauvin did not tell Robinson that children were restricted to the townhouse units. R. Vol. II at 80–81. Robinson accompanied Chauvin to inspect a model unit and several available two-bedroom apartments. R.Vol. II at 83–85. Upon inquiry by Robinson, Chauvin indicated that the apartments were available immediately and offered to hold an apartment for her until the next week. R. Vol. II at 84.

Asbury also provided evidence indicating that townhouses were available for rent. On February 1, 1984, Daniel McMenay, a white male, notified Brougham Estates that he intended to vacate his townhouse. On April 4, 1984, Brougham Estates rented the townhouse vacated by McMenay to John Shuminski, a white male. R. Vol. III at 9–10. On March 10, 1984, Randall Hockett, a white male, also rented a townhouse at Brougham Estates. In addition, Asbury provided computer data sheets generated by Brougham Estates which indicated that a third townhouse was unoccupied at the time of her inquiry on February 23, 1984 and remained vacant as of April 10, 1984. There was also evidence that a building which included townhouse units had been closed for the winter but would be available for rent beginning in the spring. On February 22, 1984, one day prior to Asbury's inquiry into vacancies, James Vance, a white male, paid a deposit for a townhouse which he occupied when the building opened on April 10, 1984. R. Vol. II at 131, 134. Since Asbury testified that she told Chauvin she did not need to occupy a rental unit until the beginning of April, the jury could have concluded that at least one of the townhouses which was subsequently rented to the white males was available at the time Asbury inquired. Although defendants took the position at trial that the

townhouses were closed or out of order for repair and therefore not available to rent, the jury was free to accept the evidence of availability presented by the plaintiff.

Since Asbury met her burden of proving a prima facie case of racial discrimination, the burden shifted to defendants to prove a legitimate, non-discriminatory reason for denial of housing. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981).

**B. Failure of Proof of Legitimate, Non-discriminatory Reason for Rejection.**

■ Defendants claimed their legitimate, nondiscriminatory reasons for rejecting Asbury arose out of the policies at Brougham Estates that families with one child could rent townhouses but not apartments, and that families with more than one child were not permitted to move into Brougham Estates. R. Vol. II at 113. Defendants further argued that they made no exceptions to these rules. R. Vol. II at 114. Defendants contended that in accordance with these rental policies, no appropriate housing was available for Asbury when she inquired. However, plaintiff introduced evidence indicating that exceptions to these rules had been made on several occasions; families with children had rented apartments, and families with more than one child had been permitted to move into Brougham Estates. R. Vol. II at 163–171. Asbury was not provided information about the terms and conditions that gave rise to an exception to the policy concerning children being restricted to the townhouses. R. Vol. II at 32. The jury could therefore find that defendants' reasons for denying Asbury the opportunity to negotiate for rental were not legitimate and nondiscriminatory.

■ Defendants also argue that evidence of a high percentage of minority occupancy in Brougham Estates conclusively rebuts the claim of intentional racial

discrimination.[5] Although such statistical data is relevant to rebutting a claim of discrimination, statistical data is not dispositive of a claim of intentional discrimination. *Furnco Construction Co. v. Waters,* 438 U.S. 567, 580, 98 S.Ct. 2943, 2951, 57 L.Ed.2d 957 (1977). Moreover, there was other evidence from which the jury could have determined that race was a motivating factor in defendants' decision to refuse to negotiate with Asbury for a rental unit.

## II. Sufficiency of Evidence Supporting Punitive Damages Award.

Defendant Brougham contends that there was insufficient evidence supporting the jury's award of punitive damages against him because he never met or dealt with the plaintiff, the actions of Chauvin should not be attributed to him, and he did not promulgate any discriminatory policies or procedures.

Punitive damages may be awarded against a defendant "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Smith v. Wade,* 461 U.S. 30, 56, 103 S.Ct. 1625, 1640, 75 L.Ed.2d 632 (1983). The jury has discretion to award punitive damages to punish outrageous conduct on the part of a defendant and to deter similar conduct in the future. *Id.* at 54, 103 S.Ct. at 1639.

 Plaintiff advanced two theories supporting Brougham's liability for punitive damages: (1) Brougham's own discriminatory conduct in establishing rental policies, procedures and rules; and (2) his authorization or ratification of discriminatory conduct by Chauvin, his employee. We find sufficient evidence to establish liability under either theory.

In this case, Asbury presented evidence that Leo Brougham was the managing partner of Brougham Estates and Brougham Management Company. R. Vol. II at 102. Brougham established all policies,

rules and rental procedures for Brougham Estates. R. Vol. II at 102. Chauvin worked for Brougham who instructed her about the rental policies and procedures. R. Vol. II at 128. Among the policies and procedures implemented by Brougham were the requirements that Chauvin routinely and untruthfully tell people over the phone that there were no vacancies, whether or not vacancies existed, but that Chauvin then encourage the individuals to come in, inspect the premises and discuss upcoming vacancies. R. Vol. III at 130–31. Brougham established the requirement of visual observation of a prospective tenant. R. Vol. II at 102, Vol. III at 102. Although a policy that prospective tenants must be visually scrutinized is not necessarily improper,[6] under the circumstances of this case, the jury could have inferred that the policy operated to screen prospective tenants on the basis of race and that, at a minimum, Brougham was callously indifferent to this result of his policy. Indeed, this policy had given rise to several administrative complaints by single black females prior to Asbury's inquiry about a vacancy. R. Vol. III at 44–52. Brougham was aware of previous claims of discriminatory practices in the rental of units at Brougham Estates. R. Vol. III at 44–52, 59–63.

Another policy established by Brougham was that a family with a child could occupy only a townhouse. R. Vol. II at 108–111. Chauvin was advised of this policy. R. Vol. II at 114. Brougham testified that he made no exceptions to the policy, and he testified specifically that no tenant or prospective tenant with a child could obtain permission to be excepted from the rule. R. Vol. II at 114. Plaintiff, however, produced evidence that exceptions had been created on occasion. R. Vol. II at 151–54, 164–72. Those exceptions had been authorized by Brougham and had been made on an individual basis. R. Vol. II at 153–54, 171. The rental policies, procedures and rules, including criteria for exceptions,

---

5. Defendants introduced evidence indicating that in 1983 total black occupancy was 20% and in 1984 total black occupancy was 25%. R. Vol. III at 99–100.

6. *See, Steele v. Title Realty Co.,* 478 F.2d 380, 383 (10th Cir.1973).

were not kept in written form. R. Vol. II at 107–08. From the evidence presented, the jury could have determined that the policies established and implemented by defendant Brougham directly fostered the discrimination which Asbury experienced, that Brougham should have been aware that this might occur, and that Brougham was recklessly or callously indifferent to it happening.

Plaintiff also offered evidence tending to prove that Brougham ratified Chauvin's actions. In March, 1984, shortly after her encounter with Chauvin, Asbury filed a complaint with the Department of Housing and Urban Development (HUD) claiming discrimination on the basis of race and sex. Asbury requested a formal apology and that the discriminatory practices cease. Following notification by HUD that a complaint had been filed by Asbury, Brougham personally took steps to investigate the complaint. He drove through the neighborhood where Asbury had found a rental and observed several children in front of Asbury's home. R. Vol. II at 161. In an attempt to confirm his assumption that Asbury had more than one child, Brougham acquired the unlisted phone number of a neighbor of Asbury, Judith Hunter, and asked Hunter questions about Asbury's living arrangements. R. Vol. II at 160–163. Hunter told Brougham that to her knowledge Asbury had only one child. R. Vol. II at 163. In addition, Brougham testified at trial that he had never gone to Asbury's place of employment to seek information about her. R. Vol. III at 3. However, in rebuttal, one of Asbury's co-workers testified that Brougham had been at Asbury's place of employment and that Brougham had asked questions about her. R. Vol III at 152–155. After Brougham took these investigatory steps, he never apologized to Asbury, although it appears that he determined Asbury had only one child and therefore fit within the residential policies of Brougham Estates. Based on the evidence presented, the jury was at liberty to decide that Brougham had not been a truthful witness. Furthermore, the jury could have drawn the inference that Brougham's failure to apologize or otherwise remedy the

situation, after personally investigating Asbury's claim of discrimination at Brougham Estates, was an acceptance and ratification of Chauvin's treatment of Asbury.

A district court's denial of a motion for new trial will be disturbed on appeal only upon a showing of abuse of discretion. *Suggs v. State Farm Fire and Casualty Co.,* 833 F.2d 883, 887 (10th Cir.1987), *cert. denied,* — U.S. —, 108 S.Ct. 1732, 100 L.Ed.2d 196 (1988). Having reviewed the record in this case, we find that there was substantial evidence supporting and a reasonable basis for the jury's verdict awarding both compensatory and punitive damages, and we affirm the district court's decision to deny defendants' motion for a new trial.

III. Plaintiff's Request for Attorney's Fees under 42 U.S.C. § 1988 and for Damages and Double Costs for Frivolous Appeal.

■ Plaintiff seeks costs and attorney's fees under 42 U.S.C. § 1988 for expenses of defending the appeal. Civil rights plaintiffs who successfully defend their judgment on appeal are entitled to recover such fees under § 1988. *Garcia v. Salt Lake County,* 768 F.2d 303, 310–311 (10th Cir. 1985). We therefore remand the case to the district court for an assessment of additional attorney's fees. *Id.* An award of costs of the appeal will be entered for plaintiff on consideration of her bill of costs and any objections thereto. *Id.*

■ Plaintiff also seeks an award of damages and double costs for delay based on her contention that the appeal was frivolous. Courts have discretion to award costs and damages as a penalty for bringing a frivolous appeal. Fed.R.App. 38; *Braley v. Campbell,* 832 F.2d 1504, 1510–12 (10th Cir.1987). A frivolous appeal is "one in which the result is obvious, or where the appellants' claims are utterly meritless." *Int'l Union of Bricklayers v. Martin Jaska, Inc.,* 752 F.2d 1401 (9th Cir.1985). Subjective bad faith is not a prerequisite to an award of damages and double costs; an appeal lacking foundation is sufficient. *Braley,* 832 F.2d at 1510–12.

While we have determined that there was ample evidence to support the jury's finding of intentional racial discrimination, we cannot say that defendants' appeal of the compensatory damages award was utterly meritless. With respect to the award of punitive damages, we believe there was a significant question as to the sufficiency of the evidence on the issues of Brougham's intentional or reckless establishment of discriminatory policies and Brougham's ratification of Chauvin's actions. We conclude that defendants' appeal was not frivolous, and we therefore decline to award damages or double costs.

AFFIRMED AND REMANDED.