UNITED STATES COURT OF APPEALS

**Filed 8/15/96**

FOR THE TENTH CIRCUIT

---

DONRE SAMPSON and AARON
SAMPSON,

       Plaintiffs-Appellants,

v.

NORWEST FINANCIAL, INC., a
corporation of the State of Iowa and
NORWEST FINANCIAL UTAH,
INC.,

       Defendants-Appellees.

No. 95-4183
(D.C. No. 94-CV-113)
(D. Utah)

---

ORDER AND JUDGMENT[*]

---

Before PORFILIO, BRIGHT,[**] and KELLY, Circuit Judges.

---

After examining the briefs and appellate record, this panel has determined

unanimously to grant the parties' request for a decision on the briefs without oral

---

[*]    This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

[**]    Honorable Myron H. Bright, Senior Circuit Judge, United States Court of
Appeals for the Eighth Circuit, sitting by designation.

argument.  See Fed. R. App. P. 34(f) and 10th Cir. R. 34.1.9.  The case is therefore ordered submitted without oral argument.

This action arose out of business dealings between plaintiffs Donre Sampson and Aaron Sampson, father and son, and defendants Norwest Financial, Inc., and Norwest Financial Utah, Inc. (Norwest Financial Utah).  Norwest Financial Utah is a finance company who loaned plaintiffs money.  Plaintiffs alleged that they were unlawfully discriminated against by defendants on the basis of their race in their business dealings in violation of 42 U.S.C. §§ 1981 and 1982.  Plaintiffs also alleged supplemental state claims for race discrimination, malicious prosecution, intentional and negligent infliction of emotional distress, false imprisonment, assault, false arrest, and conversion.  The district court granted defendants' motion for summary judgment in regard to the racial discrimination claims pursuant to 42 U.S.C. §§ 1981 and 1982, and Utah Code Ann. § 13-7-3.  We reverse.

On July 27, 1989, plaintiffs pledged an automobile as security against a loan in the amount of $1,929.56 from Norwest Financial Utah.  Plaintiffs became delinquent on loan payments in February 1991, and defendants took possession of the automobile.

After plaintiffs made up the delinquent payments on the loan, they executed a written contract on February 22, 1991, in which defendants acknowledged that

plaintiffs' loan payments were back on schedule and that defendants had released the automobile to plaintiffs. Mr. Mark Carver, representing defendants in the new contract with plaintiffs, told plaintiffs that regardless of the written terms of the contract, plaintiffs would not be permitted to take possession of the automobile until the full amount of the loan was repaid.

Between August 1991 and November 1992, plaintiffs paid defendants monthly payments on the loan totaling $1,040. While plaintiffs were making their loan repayments, defendants sold plaintiffs' automobile to a third party. Defendants sold plaintiffs' automobile without plaintiffs' knowledge and without complying with Utah law governing the sale of property by a creditor.

On December 28, 1992, plaintiffs went to defendants' place of business to pay the remaining amount due on the loan and to obtain their automobile. Defendants informed plaintiffs that their automobile had been sold. Defendants gave plaintiffs copies of the second contract executed on February 22, 1991, and requested plaintiffs to return the following day to talk to the manager.

Plaintiffs returned to Norwest Financial Utah on December 29, 1992, to meet with the manager, Mr. Curtis Packer. Mr. Packer told plaintiffs that Norwest Financial Utah did not intend to do anything for plaintiffs as a result of the wrongful disposal of the automobile. Mr. Packer asked Mr. Donre Sampson to return the copies of the February 22 contract, but Mr. Sampson refused, turned,

and began to leave the building. Then, Mr. Packer yelled to a fellow employee, Mr. Michael Benson, "Stop them, lock the door." Mr. Packer then tackled Mr. Donre Sampson and forcefully attempted to recover the documents which defendants had given plaintiffs the previous day. Mr. Aaron Sampson testified in a deposition that during the assault he heard Mr. Packer call his father "nigger."

Defendants caused arrest warrants to be issued against plaintiffs Donre Sampson and Aaron Sampson, and caused criminal charges to be brought against each of them. Plaintiffs were tried and acquitted of all criminal charges brought by defendants against them. The Sampsons then brought this action.

"We review the district court's grant of summary judgment de novo." Reynolds v. School Dist. No.1, 69 F.3d 1523, 1531 (10th Cir. 1995). Under Federal Rule of Civil Procedure 56(c), summary judgment is proper only when the pleadings, affidavits, depositions, or admissions establish there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law. Whether a fact is material is determined by looking to relevant substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). "We construe the factual record and all reasonable inferences therefrom in the light most favorable to the party opposing summary judgment." Reynolds, 69 F.3d at 1531 (citation omitted).

Plaintiffs contend that defendants violated 42 U.S.C. §§ 1981 and 1982 by racially discriminating against them. The district court held plaintiffs failed to establish discriminatory intent. In Randle v. City of Aurora, 69 F.3d 441 (10th Cir. 1995), we recently explained that "a civil rights plaintiff may withstand a motion for summary judgment and is entitled to present his claim to the fact finder if plaintiff establishes a prima facie case and presents evidence that defendant's proffered non-discriminatory reason was pretextual--i.e., unworthy of belief." Id. at 452-53 n.17. To establish a prima facie case in a § 1981 claim, a plaintiff must allege facts in support of the following elements: (1) an intent to discriminate on the basis of race by defendant;[1] and (2) the discrimination concerned one or more of the activities enumerated in the statute.[2] See Reynolds,

---

[1] The Supreme Court has construed § 1981 as prohibiting racial discrimination against all persons, including white persons. McDonald v. Santa Fe Trail Transp. Co., 427 U.S. 273, 287 (1976).

[2] Section 1981(a) originally provided in relevant part: "All persons . . . shall have the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens." 42 U.S.C. § 1981(a). This language was construed to prohibit discrimination only in contract formation or the legal enforcement of a contract right. Patterson v. McLean Credit Union, 491 U.S. 164, 176-77 (1989). Hence, Defendants argue on appeal that § 1981 is inapplicable in this case because it concerns post-contract formation conduct.

The Civil Rights Act of 1991 amended § 1981 to prohibit racial discrimination in "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." Pub. L. No. 102-166, § 101, 105 Stat. 1071, 1071-72 (1991) (codified at 42 U.S.C. § 1981(a) & (b)). The Civil Rights Act of 1991

(continued...)

69 F.3d at 1532. Here, defendants did not provide a nondiscriminatory explanation for their treatment of plaintiffs. Instead, the district court held that plaintiffs had failed to establish a prima facie case by failing to sufficiently set forth facts which establish an intent by defendants to discriminate against them on the basis of race. While the single use of a racial slur or epithet will not support an actionable claim of racial discrimination, where, however, disparate treatment occurs accompanied by a racist remark, even a single one, such conduct will sufficiently indicate that racial animus provided a motivating factor of the disparate treatment and, therefore, will support a claim under § 1981.[3] In Cone v.

---

[2](...continued)
was effective November 21, 1991, and is not applied retroactively to claims arising before that date. Rivers v. Roadway Express, Inc., 511 U.S. 298, 114 S. Ct. 1510, 1519-20 (1994). The events underlying this action occurred both before and after November 21, 1991. We apply the amended version of § 1981 with our focus on the events giving rise to a § 1981 claim after November 21, 1991. See Reynolds, 69 F.3d at 1532 n.11.

[3]       The district court bases its decision on Sampson v. Village Discount Outlet, Inc., 832 F. Supp. 1163, 1167 (N.D. Ill. 1993), aff'd without published op., 43 F.3d 1474 (7th Cir. 1994)(table). That opinion dismissed as failing to show a civil rights violation a complaint asserting a false arrest by a retail store security officer contemporaneous with the officer's statement that "I will show you F__ Jew, who I am!" Id. at 1167.

We question the Sampson analysis that the term "Jew," as used in that case "is not an opprobrium that stigmatizes Jewish people because of their ethnicity." Id. at 1167. But in any event that opinion distinguishes the term "niggers" as sufficient to evidence racial attitudes. Id. at 1167 (citing to Hunter v. Allis-Chalmers Corp., 797 F.2d 1417, 1423 (7th Cir. 1986)).

(continued...)

-6-

Longmont United Hosp. Ass'n, 14 F.3d 526 (10th Cir. 1994), we observed that "[i]solated comments, unrelated to the challenged action, are insufficient to show discriminatory animus . . . ." Id. at 531. Here, defendants' alleged use of the term "nigger" was directly in connection with the challenged conduct. Thus, it is relevant and probative of the motivations and intentions of defendants in their treatment of plaintiffs.

The parties in this case are involved in a rather simple contract dispute concerning whether defendants converted plaintiffs' automobile. Plaintiffs claim defendants would not have treated a white person in the same manner in which they were treated. According to plaintiffs, on December 29, 1992, defendants attempted to falsely imprison plaintiffs as a result of the contract dispute. While assaulting and attempting to forcefully recover incriminating documents, defendants called Mr. Donre Sampson "nigger." We believe that the alleged reprehensible treatment of plaintiffs by defendants, accompanied by the use of the term "nigger," is sufficient to demonstrate that plaintiffs' race was a motivating factor for defendants' conduct. We hold that, for purposes of summary judgment, plaintiffs' allegations and evidence are sufficient to establish the element of racial motive for a prima facie case under § 1981.

---

[3](...continued)

The district court held that plaintiffs failed to show discriminatory intent under their § 1982 claim.[4] See Asbury v. Brougham, 866 F.2d 1276, 1279 (10th Cir. 1989) (requiring a showing of discriminatory intent for a prima facie § 1982 case). The district court also concluded that plaintiffs failed to establish a claim for racial discrimination under Utah Code Ann. § 13-7-3.[5] We hold that the allegations and evidence provide sufficient evidence to set forth prima facie cases under § 1982 and Utah § 13-7-3. Consequently, we reverse the district court and remand for further proceedings consistent with this opinion.

The district court did not mention plaintiffs' supplemental state law claims in granting defendants' motion for summary judgment. We presume those claims survive.

---

[4]     Section 1982 states:

All citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property.

42 U.S.C. § 1982.

[5]     Utah Code Ann. § 13-7-3 provides in relevant part:

All persons within the jurisdiction of this state are free and equal and are entitled to full and equal accommodations, advantages, facilities, privileges, goods and services in all business establishments and in all places of public accommodation, and by all enterprises regulated by the state of every kind whatsoever, without discrimination on the basis of race, color, sex, religion, ancestry or national origin.

The judgment of the United States District Court for the District of Utah is

REVERSED and REMANDED.


                                    Entered for the Court


                                    Myron H. Bright
                                    Senior Circuit Judge