**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

JONATHAN E. PUMPHREY; CLAY
KEITH; BALTIMORE NEIGHBORHOODS,
INCORPORATED,
Plaintiffs-Appellants,

v.

No. 95-1998

STEPHEN HOMES, INCORPORATED;
SHEILA ORT,
Defendants-Appellees.

UNITED STATES OF AMERICA,
Amicus Curiae.

JONATHAN E. PUMPHREY; CLAY
KEITH; BALTIMORE NEIGHBORHOODS,
INCORPORATED,
Plaintiffs-Appellees,

v.

No. 95-3032

STEPHEN HOMES, INCORPORATED;
SHEILA ORT,
Defendants-Appellants.

UNITED STATES OF AMERICA,
Amicus Curiae.

JONATHAN E. PUMPHREY,
Plaintiff-Appellant,

and

CLAY KEITH; BALTIMORE
NEIGHBORHOODS, INCORPORATED,
Plaintiffs,

No. 96-1157

v.

STEPHEN HOMES, INCORPORATED;
SHEILA ORT,
Defendants-Appellees.

UNITED STATES OF AMERICA,
Amicus Curiae.

Appeals from the United States District Court
for the District of Maryland, at Baltimore.
John R. Hargrove, Senior District Judge.
(CA-93-1329-HAR)

Argued: October 31, 1996

Decided: March 25, 1997

Before RUSSELL, ERVIN, and WILKINS, Circuit Judges.

_____

Affirmed in part, reversed in part, and remanded by unpublished per
curiam opinion.

_____

**COUNSEL**

**ARGUED:** Andrew David Freeman, BROWN, GOLDSTEIN &
LEVY, Baltimore, Maryland, for Appellants. Francis Raymond Laws,

2

KOHLMAN & SHEEHAN, P.A., Baltimore, Maryland, for Appellees. **ON BRIEF:** Lauren E. Willis, BROWN, GOLDSTEIN & LEVY, Baltimore, Maryland, for Appellants. Deval L. Patrick, Assistant Attorney General, David K. Flynn, Lisa J. Stark, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Amicus Curiae.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Plaintiffs Jonathan E. Pumphrey, Clay Keith, and Baltimore Neighborhoods, Inc. (BNI) appeal various rulings of the district court concerning their action alleging that Stephen Homes, Inc. and Sheila Ort, a sales agent for Stephen Homes, engaged in discriminatory housing practices in violation of 42 U.S.C.A. § 3604(a), (d) (West 1994).[1] Stephen Homes and Ort cross-appeal, challenging the denial of their motion for attorney's fees and the award of attorney's fees to Pumphrey. We affirm in part, reverse in part, and remand.

I.

Pumphrey is an African-American who lived in a neighborhood known as Greenridge II in Harford County, Maryland. Stephen

_____

[1] Subsection (a) provides that it is unlawful "[t]o refuse to sell or rent after the making of a bona fide offer, or to refuse to negotiate for the sale or rental of, or otherwise make unavailable or deny, a dwelling to any person because of race, color, religion, sex, familial status, or national origin." 42 U.S.C.A. § 3604(a). Subsection (d) makes it unlawful "[t]o represent to any person because of race, color, religion, sex, handicap, familial status, or national origin that any dwelling is not available for inspection, sale, or rental when such dwelling is in fact so available." 42 U.S.C.A. § 3604(d).

Homes was building houses on several lots in Greenridge II and employed Ort as a sales representative for the community. Pumphrey became interested in moving to another location in the neighborhood, and he approached Ort about the possibility of purchasing a lot and building one of the houses offered by Stephen Homes. Ort indicated that the only lot in Greenridge II that could accommodate the type of house that Pumphrey desired to build was Lot No. 698. After viewing the lot, Pumphrey expressed an interest in it and asked Ort how he should proceed. According to Pumphrey, Ort did not instruct him to place a deposit on the lot, but instead advised him not to take any action until Ort verified that the lot would accommodate the house Pumphrey was interested in building.

Pumphrey testified that Ort telephoned him the following day and informed him that the lot was unavailable because it had been sold. Ort agreed that she indicated the lot was unavailable, but claimed that it was because she accepted a "verbal hold" on the lot--without requiring any money from the prospective purchasers--after Pumphrey decided not to place a deposit on it. One week later, however, the Crimis--friends of Pumphrey who were Caucasian--visited Ort and inquired about the availability of Lot No. 698. Ort informed them that the lot was for sale. Pumphrey claimed that upon learning of Ort's conversation with the Crimis, he called Ort to reaffirm his interest in Lot No. 698, but that she again stated that it was unavailable. Further, Pumphrey alleged that Ort did not respond to a letter that he slipped under her office door expressing his continuing interest in the lot.

Pumphrey subsequently contacted BNI and requested that it investigate Stephen Homes' housing practices.[2] BNI sent two "testers"-- one African-American and one Caucasian--to visit Ort in her office and inquire about the availability of lots. Ort allegedly informed the Caucasian tester that five lots were available in a new section of Greenridge II. Also, Ort asked him whether he was a contingent or non-contingent buyer, explaining that two additional lots could be made available for non-contingent buyers. The African-American tes-

_____

[2] BNI is an organization that is concerned generally with community housing issues, including the enforcement of federal and state fair housing laws.

4

ter, Clay Keith, testified that Ort told him no lots were available in Greenridge II and that he might consider looking elsewhere. Keith further contended that Ort did not inquire whether he was a contingent or non-contingent buyer. Keith admitted, however, that Ort answered all of his questions, provided him with a price list and advised him that, although no property was currently available, Stephen Homes planned to open a new section in thirty days.

Pumphrey, Keith, and BNI then filed this action against Ort and Stephen Homes, asserting that they had unlawfully misrepresented the availability of lots in Greenridge II and refused to negotiate for the sale of a dwelling because of Pumphrey's and Keith's race in violation of 42 U.S.C.A. § 3604(a), (d).[3] At the close of the presentation of evidence, the district court granted judgment as a matter of law to Stephen Homes and Ort on Plaintiffs' claims brought pursuant to § 3604(a) and on Plaintiffs' request for punitive damages. The jury then returned a verdict in favor of Pumphrey, but against Keith and BNI, on their claim that Stephen Homes and Ort misrepresented the availability of the Greenridge II property in violation of § 3604(d). Following trial, the district court granted Pumphrey's motion for attorney's fees and costs, awarding him $37,796.82, and denied a cross-motion by Stephen Homes and Ort for attorney's fees. Pumphrey appeals the decision of the district court granting judgment as a matter of law on his claim for punitive damages and challenges the adequacy of the award of attorney's fees.[4] Keith and BNI appeal the dismissal of their claims under § 3604(a). Stephen Homes and Ort cross-appeal the award of attorney's fees to Pumphrey and the refusal of the district court to award attorney's fees to them.

_____

[3] Plaintiffs also asserted a cause of action pursuant to 42 U.S.C.A. §§ 1981, 1982 (West 1994). That claim is not at issue on appeal.

[4] Keith and BNI also appeal the dismissal of punitive damages. Because we affirm the grant of judgment as a matter of law on their claims under § 3604(a), and since the jury returned a verdict against Keith and BNI on their § 3604(d) claims, we decline to address their argument with respect to punitive damages.

5

II.

Pumphrey contends that the district court erred in ruling that under Maryland law, he had not produced sufficient evidence of malice or ill will to warrant submitting the issue of punitive damages to the jury. We conclude that the district court erred in determining that Maryland law governed the recovery of punitive damages. Moreover, we find that the record contains sufficient evidence to merit submission of punitive damages to the jury as to Ort.

Although Congress has provided for the recovery of punitive damages by victims of discriminatory housing practices, it established no guidance with respect to the evidentiary standard that justifies an award of punitive damages. See 42 U.S.C.A.§ 3613(c)(1) (West 1994). The parties agree that the standard for recovery of punitive damages in fair housing cases is a question of federal law. And, federal courts have consistently held that punitive damages are recoverable in actions under § 3604 "`when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others.'" Asbury v. Brougham, 866 F.2d 1276, 1282 (10th Cir. 1989) (quoting Smith v. Wade, 461 U.S. 30, 56 (1983)); United States v. Balistrieri, 981 F.2d 916, 936 (7th Cir. 1992) (citing Smith , 461 U.S. at 51); see also Fountila v. Carter, 571 F.2d 487, 491 (9th Cir. 1978) (explaining that actual malice is not a prerequisite to the recovery of punitive damages for discriminatory housing practices). Thus, contrary to the ruling of the district court, Pumphrey was not required to prove malice or ill will.

Applying this standard, we conclude that the district court erred in refusing to submit the issue of punitive damages to the jury with respect to Ort. One view of the evidence presented was sufficient to demonstrate that Ort intentionally discriminated against Pumphrey. Indeed, the district court instructed the jury that it could find in favor of Pumphrey on the issue of compensatory damages only if "the defendant intentionally and purposely discriminated against [Pumphrey] because of [his] race." J.A. 715. The jury therefore necessarily found that Ort acted intentionally in misrepresenting the availability of housing to Pumphrey in violation of § 3604(d)--a finding that is not challenged on appeal. Additionally, Ort testified at trial that she

6

was required to attend seminars that included instruction concerning legal requirements relating to equal housing and that the model home --where she spent six to eight hours each day--displayed posters stating that racially discriminatory housing practices were illegal under federal law. The fact that Ort knew discriminatory treatment with respect to housing was unlawful, coupled with evidence that she intentionally misrepresented the availability of lots being sold by Stephen Homes, could lead a reasonable juror to conclude that Ort acted with a reckless or callous indifference to Pumphrey's rights under § 3604(d). See Tyus v. Urban Search Management, 102 F.3d 256, 266 (7th Cir. 1996) (reversing judgment as a matter of law in favor of defendant on punitive damages in a Fair Housing Act case because plaintiffs presented evidence that defendants had knowledge of the law and engaged in intentional acts of housing discrimination). Because there was evidence in the record, viewed in the light most favorable to Pumphrey, from which the jury reasonably could have concluded that an award of punitive damages was justified, we find that the district court improperly granted judgment as a matter of law. See Fed. R. Civ. P. 50(a)(1); Benesh v. Amphenol Corp. (In Re Wildewood Litig.), 52 F.3d 499, 503 (4th Cir. 1995). Accordingly, we reverse the grant of judgment as a matter of law on Pumphrey's request for punitive damages against Ort and remand for the issue of punitive damages to be submitted to a jury.

However, we find no evidence in the record that Stephen Homes ratified or facilitated the discriminatory acts of Ort. See City of Chicago v. Matchmaker Real Estate Sales Ctr., Inc., 982 F.2d 1086, 1100 (7th Cir. 1992) (noting that in fair housing actions "`[a] principal is liable for punitive damages for the discriminatory acts of [its] agent only if [the principal] knew of or ratified the acts'" (quoting Hamilton v. Svatik, 779 F.2d 383, 389 (7th Cir. 1985) (first alteration in original))). We therefore affirm the judgment as a matter of law on Pumphrey's request for punitive damages against Stephen Homes.

III.

In addition to the punitive damages issue, the parties raise various other challenges to the district court's rulings. Keith and BNI contend that the district court erred in granting judgment as a matter of law to Stephen Homes and Ort on their claims pursuant to§ 3604(a);

7

Pumphrey challenges the amount of the award of attorney's fees as calculated by the district court; and, Stephen Homes and Ort appeal the award of attorney's fees to Pumphrey and the denial of their motion for attorney's fees. After carefully considering the arguments and briefs of counsel and reviewing the record, we conclude that the district court committed no reversible error with respect to these rulings.[5]

IV.

For the foregoing reasons, we affirm the dismissal of the claims of Keith and BNI under § 3604(a), the rulings with respect to attorney's fees, and the evidentiary and pretrial determinations of the district court. We reverse the decision of the district court granting judgment as a matter of law to Ort on Pumphrey's claim for punitive damages and remand for further proceedings consistent with this opinion.

<u>AFFIRMED IN PART, REVERSED IN PART,
AND REMANDED</u>

_____

[5] Plaintiffs also raise various evidentiary and pretrial issues. We conclude that these claims are without merit.

8